UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHEFFIELD LABORATORIES | : | CIVIL ACTION NO.: |
| Plaintiff | : | |
| v. | : | |
| | : | |
| HARTZ MOUNTAIN CORPORATION, | : | |
| MAX C. MARX and MATTHEW | : | |
| BUCKLEY | : | |
| Defendants | : | FEBRUARY 7, 2008 |

## VERIFIED COMPLAINT

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 USC §§ 1331 and 1367.

### PARTIES

1.     Sheffield Laboratories (Sheffield) is a division of Faria Limited, LLC, a Connecticut Limited Liability Company with its principal business address at 170 Broad Street, New London, Connecticut.  Sheffield is in the business of developing and manufacturing over the counter pharmaceutical products.

2.     Defendant Hartz Mountain Corporation (Hartz) is a New Jersey Corporation with its principal business offices located at 400 Plaza Drive, Seacaucus,

New Jersey.  Hartz is in the business of manufacturing and distributing pet care products for sale to the general public.

3. Defendant Max C. Marx was, at all times relevant to this complaint, the Corporate Secretary of and General Counsel to the Hartz Mountain Corporation.

4. Defendant Matthew Buckley was, at all times relevant to this complaint, the Global Sourcing Manager for Hartz Mountain Corporation.

5. Hartz and Sheffield have been involved in a business relationship since approximately 2001.

**FACTS**

6. In approximately July 2005, Hartz and Sheffield began working together to develop and manufacture two hairball formulae (original and salmon flavored) that were to be distributed under the Hartz label.

7. It was the agreement of the parties that Sheffield would devote significant amounts of time and materials in developing the hairball formulae (original and salmon flavored) for Hartz, and that Sheffield would begin producing these products for distribution and sale by Hartz under the Hartz label.

2

8. At the outset of this project, Hartz was in the possession of two hairball formulae (original and salmon flavored), which had certain defects that prevented them from being marketable. The defects included making animals sick and the product instability that caused the product to separate into its component parts while in its package.

9. It was the agreement of the parties that Sheffield engage in research, development and testing and develop marketable hairball formulae.

10. With the knowledge and consent of defendants, as of August 2007, Sheffield had invested over 500 hours of research and development time, with a value of approximately $60,000, in developing stable and marketable hairball formulae (original and salmon flavored), and approximately $30,000 in raw materials costs.

11. The time and expense invested in this project by plaintiff resulted in the development of new formulae (original and salmon flavored) that were significantly different from the formulae previously marketed by Hartz. In particular, ingredients were added in order to prevent the formulae from separating into its component parts during storage, new flavoring agents were used in order to make the product safe for the humans involved in manufacturing and production as well as the humans using the

3

product to treat their animals and the animals themselves, and ingredients were added to prevent the growth of animal harming bacteria within the product.

12. With the full knowledge and consent of all defendants, on or about August 19, 2007, Hartz indicated that it no longer wished to work with Sheffield as the producer and manufacturer of hairball formulae (original and salmon flavored) to be marketed under the Hartz brand name.

13. As a result, Sheffield communicated to Hartz, in writing: (1) that Sheffield was the exclusive owner of the hairball formulae (original and salmon flavored) and that in order for Hartz to enter into a contract with some other manufacturer and/or to manufacture the hairball formulae (original and salmon flovered) it would need to purchase Sheffield's exclusive property rights in the formulae (original and salmon flavored) at a cost of $15,000 per formula; and (2) that Sheffield would also seek payment for approximately $90,000 in research, development and raw materials costs that had been incurred by Sheffield solely based on the contractual promises and representations of Hartz that it would enter into a long-term relationship with Sheffield to produce the hairball formulae it was developing to be marketed under the Hartz brand name.

14.     The cost of $15,000 per formula was based on written correspondence between Hartz and Sheffield dated January 19, 2006.

15.     Sheffield's position that it has invested over $90,000 in research, development and raw material acquisition costs based on the contractual representations of Hartz that it would enter into a long-term relationship with Sheffield for the production of the hairball formulae to be marketed by Hartz under its brand name was also based on documents drafted in January 2006 insofar as they concerned the total amounts that Sheffield would be investing in the product development process and how these costs would be recouped by Sheffield in the event that Hartz chose not to have Sheffield manufacture these hairball remedies (original and salmon flavored).

**COUNT ONE: (Breach of Contract)**

1-15.   Paragraphs 1-15 are incorporated by reference in this Count One as if fully set forth herein.

16.     Defendant Hartz has breached its contract with plaintiff Sheffield in that it has refused to either consummate the agreement that the parties would enter into a supply agreement or that Hartz would pay $15,000 per formula for the two hairball remedies (original and salmon flavoerd) developed by Sheffield.

17.     As a result of Hartz's breach of contract, including its breach of the implied covenant of good faith and fair dealing, Sheffield has incurred damages.

**COUNT TWO: (Tortious Interference with Contract)**

1-17.   Paragraphs 1-17 of Count One are incorporated by reference in this Count Two as if fully set forth herein.

18.     Defendants Marx and Buckley tortiously interfered with the contract between Hartz and Sheffield by knowingly and maliciously taking positions inconsistent with the agreement between Hartz and Sheffield and thereby encouraging Hartz to breach the contract.

19.     As a result of Marx and Buckley's tortious interference with contract, including its breach of the implied covenant of good faith and fair dealing, Sheffield has incurred damages.

**COUNT THREE:**  (Promissory Estoppel)

1-18.   Paragraphs 1-18 of Count Two are incorporated by reference in this Count Three as if fully set forth herein.

19. Through their above described actions, the defendants made one or more promises to plaintiff, which they reasonably expected to induce the investment of time, raw materials, and finances by the plaintiff.

20. Plaintiff did in fact rely upon one or more promises of the defendants in expending time, money, and materials to develop marketable hairball formulae (original and salmon flavored) for future use by defendant Hartz.

21. Plaintiff has suffered damages as a result and injustice can only be avoided by enforcement of defendants' promise(s).

**COUNT FOUR: (Breach of Confidentiality Agreement)**

1-20. Paragraphs 1-20 of Count Three are incorporated by reference in this Count Four as if fully set forth herein.

21. In addition to the above describe promises and representations, in January 2006, Sheffield and Hartz entered into a Mutual Confidentiality Agreement which provided, *inter alia*, that formulae developed by either party for the purpose of discussing and entering into a possible business relationship were the confidential and proprietary information of the developing party and that a party receiving any

confidential information would "keep same confidential, subject to the terms and conditions of this agremeent." (Exhibit A, ¶1)

22. The January 2006 Mutual Confidentiality Agreement included "non-use" and "non-disclosure" provisions. (Exhibit A, ¶2.)

23. In August and/or September 2007, after severing its relationship with Sheffield, defendant Hartz, through defendant Marx, asserted that Sheffield was not the exclusive owner of the hairball formulae developed by Sheffield. (See, e.g., Exhibit B). Defendant Hartz, through Defendant Marx, stated that Hartz had the right to produce and distribute the Sheffield formulae under the Hartz label with no monetary compensation to Sheffield.

24. The defendants' wrongful use of Sheffield's formulae violates the Connecticut Uniform Trade Secrets Act (CUTSA) codified at Conn. Gen. Stat. § 35-50 et seq..

**COUNT FIVE: (CUTPA)**

1-23. Paragraphs 1-23 of Count Four are incorporated by reference in this Count Five as if fully set forth herein.

8

24.     Defendant Hartz, through defendant Marx, has also stated that Hartz will simply manufacture, distribute and sell to consumers its own previously developed hairball formulae without regard to defendants' knowledge that said formulae pose significant risks to humans and animals and that at Hartz's request a safe alternative has been developed.

25.     At all times relevant hereto, the conduct of the defendants offended public policy; was immoral, oppressive, unethical and unscrupulous; and caused substantial injury to consumers, competitors and other businesspersons; thereby violating the Connecticut Unfair Trade Practices Act (CUTPA) codified at Conn. Gen. Stat. § 42-110 et seq., resulting in ascertainable losses to the plaintiff as set forth herein.

**COUNT SIX: (Request for Declaratory Judgment)**

1-23.   Paragraphs 1-23 of Count Four are incorporated by reference in this Count Six as if fully set forth herein.

24.     Based on the foregoing, in particular the fact that the defendants have expressed the position that plaintiff is the exclusive owner of the hairball formulae (original and salmon flavored) developed at Hartz's request by Sheffield, plaintiff seeks a declaratory judgment that it is the sole owner of the hairball formulae in question.

9

WHEREFORE: The plaintiff respectfully requests:

(1) monetary damages for its research, development and raw materials costs;

(2) a declaratory judgment that Sheffield is the sole owner of the hairball formulae it developed at the request of Hartz;

(3) damages pursuant to Conn. Gen. Stat. § 42-110 et seq.

(4) damages pursuant to Conn. Gen. Stat. § 35-50 et seq.

(5) punitive and exemplary damages

(6) preliminary and permanent injunctions prohibiting Hartz from:

   (a) using or disclosing Sheffield hairball formulae (original and salmon flavored); and

   (b) putting its known to be defective hairball formulae into the stream of commerce;

(7) All applicable attorneys' fees and costs in accordance with law and the agreements between the parties; and

(8) such other and further relief as the court shall deem appropriate in law or equity.

10

Dated at New London, Connecticut this 8th day of ___February_, 2008.

PLAINTIFF,
Sheffield Pharmaceuticals

By_____/s/_____
Susan M. Phillips
Attorney for the Plaintiff
P.O. Box 321
New London, CT 06320
Ph: 860.447.1645
Fx: 860.447.3482
phillipssusan@sbcglobal.net

11